EXHIBIT A

| | |
|---|---|
| STATE OF MAINE<br>YORK, ss. | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO. |

DARLENE HAYES, )
of Sanford, County of York, )
State of Maine, )
                                 )
      Plaintiff                )
                                 )
v. )
                                 )
SOUTHERN MAINE ORAL AND )
MAXILLOFACIAL SURGERY, PA, )
                                 )
      Defendant           )

## COMPLAINT (INJUNCTIVE RELIEF REQUESTED)

NOW COMES the Plaintiff, Darlene Hayes, and complains against Southern Maine Oral and Maxillofacial Surgery, PA, as follows:

## PRELIMINARY STATEMENT

1. Darlene Hayes brings this action against defendant Southern Maine Oral and Maxillofacial Surgery, PA (hereafter "SMOMS") for its failure to ensure effective communication. Ms. Hayes is deaf and communicates primarily through American Sign Language (ASL). Because SMOMS failed to provide a qualified interpreter and later insisted on using an unqualified friend of Ms. Hayes, Ms. Hayes suffered delays in her care and suffered anxiety, fear, embarrassment, invasion of privacy, pain and stress due to the lack of effective communication.

2. Defendant's failure to provide necessary auxiliary aids and services to ensure effective communication with Ms. Hayes violates the public accommodations provisions of the Maine Human Rights Act, 5 M.R.S.A. § 4551, *et seq.*, Title III of the Americans with

1

Disabilities Act, 42 U.S.C. 12181-12189; and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794. Ms. Hayes brings this lawsuit to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendant's health care services. Ms. Hayes also seeks civil penal damages, compensatory damages, attorneys fees and costs.

## JURISDICTION

3. This action is brought pursuant to the following statutory authorities: 4 M.R.S.A. § 105, which establishes the general legal and equitable jurisdiction of this court; Maine Human Rights Act (hereinafter, the "MHRA"), 5 M.R.S. § 4551, *et seq.*, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 (hereinafter "Section 504"), 29 U.S.C. § 794.

4. On October 21, 2013, Ms. Hayes filed a timely charge of discrimination with the Maine Human Rights Commission (the "Commission") against SMOMS.

5. The charge of discrimination alleged discrimination that occurred in September and October, 2013.

6. A Commission investigator investigated Ms. Hayes' charge of discrimination and recommended to the Maine Human Rights Commission that there are reasonable grounds to believe discrimination occurred against Darlene Hayes. Exhibit 1, Investigator's Report, *Hayes v. SMOMS*, Case No. PA 13-0607.

7. On December 15, 2014, the Maine Human Rights Commission adopted the findings of the investigator and found that there are reasonable grounds to believe that Defendant

2

SMOMS discriminated against Ms. Hayes. Exhibit 2, Statement of Finding, *Hayes v. SMOMS*, PA13-0607.

8. The Commission failed, within 90 days after finding reasonable grounds to believe that unlawful discrimination occurred, to enter into a conciliation agreement with SMOMS.

9. On March 4, 2015, the Commission issued a Notice of Failed Conciliation indicating its determination that efforts to resolve the matter through conciliation had failed. Exhibit 3, Notice of Failed Conciliation, *Hayes v. SMOMS*, PA13-0607..

10. The Maine Human Rights Act provides that an action must be commenced within two years of the act of alleged unlawful discrimination complained of, or within 90 days from the date of the notice of failed conciliation, whichever is later.

11. This action has been timely filed within two years after the act of unlawful discrimination as alleged herein and within two years of the date of the notice of failed conciliation.

## THE PARTIES

12. Darlene Hayes is an individual who resides in the Town of Sanford, County of York, State of Maine.

13. Southern Maine Oral and Maxillofacial Surgery, PA (hereafter "SMOMS"), is a professional office of a health care provider with its primary location in the City of Biddeford, County of York, State of Maine.

14. Since childhood, Ms. Hayes has been a deaf individual.

15. Deafness is a per se disability without regard to severity pursuant to the Maine Human Rights Act (MHRA).

16. Ms. Hayes' hearing loss substantially limits her in the major life activity of hearing under the MHRA, ADA and Section 504.

17. Ms. Hayes' hearing loss constitutes a substantial limitation in major bodily functions including hearing and auditory functions under the ADA and Section 504.

18. Ms. Hayes has had a record of deafness under the ADA, Section 504 and the MHRA.

19. Defendant SMOMS regarded Ms. Hayes as deaf under the ADA, Section 504 and the MHRA.

20. Ms. Hayes is an individual with a disability as defined under the MHRA, the ADA, and Section 504.

21. Ms. Hayes' primary language is American Sign Language ("ASL").

22. Ms. Hayes is a qualified individual with a disability in that she can, with or without reasonable modification to rules, policies or practices, the removal of architectural, communication or transportation barriers or the provision of auxiliary aids and services meet the essential eligibility requirements for the recipient of service from SMOMS.

23. At all material times, Ms. Hayes was a patient of SMOMS.

24. SMOMS owns, leases and/or operates a place of public accommodation as defined under the MHRA, 5 M.R.S.A. § 4553(8)(F).

25. SMOMS owns, leases and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. 12181(7)(F).

26. At all material times, SMOMS received federal funds and financial assistance including payments from the Medicare and Medicaid programs and was subjected to the provisions of Section 504.

27. SMOMS is a public accommodation within the meaning of Section 504.

28. SMOMS is the largest oral and maxillofacial practice in Maine.

## FACTUAL ALLEGATIONS

29. Ms. Hayes requires an ASL interpreter to communicate effectively in a medical setting.

30. On or about the summer of 2013, Ms. Hayes' dentist referred her to SMOMS because she needed to have two teeth extracted.

31. SMOMS set an appointment for Ms. Hayes on September 17, 2013 for surgery to have two teeth extracted.

32. Prior to her appointment with SMOMS, Ms. Hayes requested an ASL interpreter.

33. SMOMS assured Ms. Hayes that an interpreter would be present at the appointment on September 17, 2013.

34. On September 17, 2013, Ms. Hayes went to SMOMS for her appointment.

35. There was no interpreter present.

36. SMOMS staff and surgeon attempted to explain, without an interpreter, complex information regarding her treatment and other information.

37. Ms. Hayes did not understand what SMOMS surgeon were attempting to convey because there was no interpreter. This communication was not effective.

38. Ms. Hayes could not converse freely with the surgeon and staff regarding her treatment because there was no interpreter.

39. Ms. Hayes told SMOMS that she was uncomfortable moving forward with treatment without an interpreter.

5

40. Ms. Hayes requested that the surgery be rescheduled until an interpreter could be present. SMOMS set the surgery for the following month.

41. Prior to the October appointment, SMOMS called Ms. Hayes to remind her of the appointment. Ms. Hayes asked if there would be in an interpreter present. SMOMS assured her that there would be an interpreter.

42. On or about October 1, 2013, Ms. Hayes went to SMOMS for her appointment.

43. There was no interpreter present.

44. Ms. Hayes waited for an interpreter to arrive.

45. Ms. Hayes asked SMOMS staff where the interpreter was. Staff indicated that the interpreter was en route.

46. Ms. Hayes became increasingly upset and stressed when no interpreter ever arrived.

47. Ms. Hayes informed SMOMS staff that she was upset.

48. Ms. Hayes was accompanied by her friend, Warren Tracey, Jr., who is hard of hearing and speaks ASL.

49. As Ms. Hayes and Mr. Tracey waited for the interpreter to arrive, staff observed them communicating in sign language. Staff made the decision to ask if Mr. Tracey would interpret.

50. SMOMS staff asked Mr. Tracey if he would interpret.

51. Mr. Tracey told SMOMS staff that he is not an interpreter and that he was only there to give Ms. Hayes a ride home after surgery.

52. Mr. Tracey informed SMOMS staff that he is neither a good interpreter nor a licensed interpreter.

53. Mr. Tracey had never been trained as an interpreter.

54. It was obvious as the SMOMS staff and Mr. Tracey interacted that Mr. Tracey was hard of hearing and he often had to ask that things be repeated to him.

55. SMOMS staff kept insisting that they could use Mr. Tracey to interpret.

56. Ms. Hayes did not agree with Mr. Tracey interpreting and she never affirmatively consented to Mr. Tracey interpreting.

57. SMOMS staff did not inform Ms. Hayes of other options they would try to provide a qualified interpreter that day. SMOMS staff did not suggest any other solution except to use Ms. Hayes' hard of hearing friend as interpreter.

58. In pain, feeling under pressure, and feeling like there were no other options, Ms. Hayes met with SMOMS and Mr. Tracey who attempted to interpret.

59. Mr. Tracey and Ms. Hayes were both very uncomfortable when Mr. Tracey was trying to interpret the information that SMOMS staff was trying to convey.

60. Mr. Tracey had to repeatedly ask SMOMS staff to repeat themselves so that he could try to lip read and hear to the best of his ability, and then try to convey what he could to Ms. Hayes.

61. Due to Mr. Tracey's hearing loss, lack of training, and unfamiliarity with medical terms, he missed many words.

62. Mr. Tracey was privy to Ms. Hayes' otherwise confidential medical information when he attempted to interpret at SMOMS' request.

63. Ms. Hayes felt rushed and forced to sign forms, including a consent form, although she did not fully understand what they said.

7

64. Ms. Hayes never wanted to be operated on or consult with SMOMS staff and surgeon without a qualified interpreter present. Ms. Hayes went forward with the surgery because she was in pain, felt pressured, and SMOMS gave her no other option.

65. After the operation when Ms. Hayes awakened in the recovery room, SMOMS staff brought Mr. Tracey to interpret.

66. Mr. Tracey could not hear well, struggled to lip read, and the staff talked fast, all which made it difficult to interpret aftercare instructions.

67. Ms. Hayes, groggy from general anesthesia, struggled to understand and communicate with staff through Mr. Tracey.

68. Ms. Hayes did not receive the majority of the information that SMOMS tried to convey through Mr. Tracey. There was no opportunity for her to be able to converse freely and freely ask questions. Finally, Ms. Hayes, upset and frustrated, gave up and left.

69. What was supposed to be a routine surgery for tooth extraction turned into an ordeal which resulted in Ms. Hayes being under stress and suffering embarrassment, humiliation, fear and invasion of privacy as her friend struggled to interpret information from SMOMS staff and surgeon.

## COUNT I: DISABILITY DISCRIMINATION UNDER THE MAINE HUMAN RIGHTS ACT

70. Plaintiff repeats and realleges the allegations contained in paragraphs 1-69 in support of this claim.

71. Ms. Hayes is deaf. Accordingly, she is considered a person with a disability as defined under the Maine Human Rights Act. 5 M.R.S.A. §§ 4553-A(1)(A) and (B).

72. SMOMS owns, leases and/or operates a place of public accommodation as defined under the MHRA. 5 M.R.S.A. § 4553(8)(F).

73. The Maine Human Rights Act provides that it is unlawful for any public accommodation "to directly or indirectly refuse, discriminate against or in any manner withhold from or deny the full and equal enjoyment to any person, on account of ... physical or mental disability ... any of the accommodations, advantages, facilities, goods, services or privileges of public accommodation, or in any manner discriminate against any person in the price, term or conditions upon which access to accommodation, advantages, facilities, goods, services and privileges may depend. 5 M.R.S. § 4592(1); Me. Hum. Rights Comm'n Reg. § 7.02(A).

74. The Maine Human Rights Act provides that unlawful public accommodations discrimination includes "a failure to take steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services .." 5 M.R.S. § 4592(1)(C); Me. Hum. Rights Comm'n Reg. § 7.17(A).

75. Pursuant to the Maine Human Rights act and its implementing regulations, "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with physical or mental disabilities." Me. Hum. Rights Comm'n Reg. § 7.17(C)(1)

76. Pursuant to the Maine Human Rights Act and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved, and the context in which the communication is taking place." Me. Hum. Rights Comm'n Reg. § 7.17(C)(1)(ii).

77. Pursuant to title III of the ADA and its implementing regulations, a public accommodation, in order to be effective, the type of auxiliary aid or service provided by the

public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." Me. Hum. Rights Comm'n Reg. § 7.17(C)(1)(ii).

78. Pursuant to the Maine Human Rights Act and its implementing regulations, a public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her. Me. Hum. Rights Comm'n Reg. § 7.17(C)(2).

79. Pursuant to the Maine Human Rights Act and its implementing regulations, a public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication. Me. Hum. Rights Comm'n Reg. § 7.17(C)(3).

80. Defendant discriminated against Ms. Hayes on the basis of her disability by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and or accommodations of their place of public accommodation and equal opportunity to participate in and benefit from defendant's health care services in violation of the Maine Human Rights Act.

81. Defendant discriminated against Ms. Hayes by denying her auxiliary aids and services necessary for communication.

82. As set out above, absent injunctive relief, there is a clear risk that Defendant's actions will recur.

## COUNT II: DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

83. Plaintiff repeats and realleges the allegations contained in paragraphs 1- 82 above.

84. Ms. Hayes is substantially limited in the major life activity of hearing and the major bodily functions of hearing and auditory systems. Accordingly, she is considered a person with a disability as defined under the ADA, 42 U.S.C. 12102(2).

85. SMOMS owns, leases and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. 12181(7)(F).

86. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation ...." 42 U.S.C. 12182(a).

87. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefit to individuals with disabilities. 42 USC 12182(b)(1)(A); 28 C.F.R. 36.202.

88. Pursuant to title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individuals with disabilities. 42 USC 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

89. Pursuant to title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved, and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

90. Pursuant to title III of the ADA and its implementing regulations, a public accommodation, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

91. Pursuant to title III of the ADA and its implementing regulations, a public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her. 28 C.F.R. § 36.303(c)(2).

92. Pursuant to title III of the ADA and its implementing regulations, a public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication. 28 C.F.R. § 36.303(c)(3).

93. Defendant discriminated against Ms. Hayes on the basis of her disability by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and or accommodations of their place of public accommodation and equal opportunity to participate in and benefit from defendant's health care services in violation of 42 U.S.C. §§ 12181, et seq.

94. Defendant discriminated against Ms. Hayes by denying her auxiliary aids and services necessary for communication.

95. As set out above, absent injunctive relief, there is a clear risk that Defendant's actions will recur.

## COUNT III: DISABILITY DISCRIMINATION UNDER SECTION 504 OF THE REHABILITATION ACT

96. Plaintiff repeats and realleges the allegations contained in paragraphs 1-95 in support of this claim.

97. Ms. Hayes is substantially limited in the major life activity of hearing and the major bodily functions of hearing and auditory systems. Accordingly, she is considered a person with a disability as defined under Section 504, as amended, 29 U.S.C. § 708(20)(B).

98. During all relevant times, Defendant was and continues to be a recipient of federal financial assistance, including but not limited to acceptance of Medicare and Medicaid.

99. Pursuant to section 504, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794.

100. Defendant has discriminated against and continues to discriminate against Plaintiff solely on the basis of her disability by denying her meaningful access to services, programs, and benefits the Defendant offers to other individuals by failing to provide auxiliary aids and services necessary to ensure effective communication in violation of section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

101. As a result of Defendant's failure to ensure effective communication, Ms. Hayes has suffered and will continue to suffer mental anguish, fear, isolation, suffering, embarrassment, and humiliation.

102. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur.

## RELIEF

Plaintiff respectfully requests that this Court enter judgment in her favor and provide the following relief:

(a) Issue a declaratory judgment that Defendant's policies, practices and procedures subjected Plaintiff to discrimination in violation of the Maine Human Rights Act, Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973;

(b) Enjoin Defendant from implementing or enforcing any policy, procedure or practice that denies individuals who are deaf or hard of hearing, such as Plaintiff, meaningful access to and full and equal enjoyment in Defendant's services or programs;

(c) Order Defendant to develop and comply with written policies, procedures, and practices to ensure that Defendant does not discriminate in the future against Plaintiffs and other similarly situated individuals who are deaf or hard of hearing, by failing to provide effective communication;

(d) Affirmatively enjoin Defendant to implement a policy that when a patient or other deaf individual determines that an interpreter is required for effective communication, one will be provided either at the time of the scheduled appointment or within two hours of the request if the appointment is unscheduled;

(e) Order Defendant to train all representatives and employees about Plaintiff's rights and the rights of individuals who are deaf, hard of hearing, as well as provide training on Defendant's policies and procedures on the use of Video Remote Interpreting and in person interpreting.

(f) Award Plaintiff compensatory damages plus interest;

(g) Award Plaintiff nominal damages;

(h) Award Plaintiff civil penal damages;

(i) Award Plaintiff attorneys' fees and costs.

(j) Award any and all other further relief as the Court deems to be just and equitable.

Dated: June 1, 2015

*Kristin L. Aiello*
Kristin L. Aiello
Maine Bar No. 8071
DISABILITY RIGHTS MAINE
24 Stone Street, Suite 204
Augusta, Maine 04330
(207) 626 2774 ext. 223
kaiello@drme.org

Dated: June 1, 2015

*Kristin Aiello for Peter Rice*
Peter M. Rice

14

                    Maine Bar No. 7277
                    DISABILITY RIGHTS MAINE
                    24 Stone Street, Suite 204
                    Augusta, Maine  04330
                    (207) 626 2774 ext. 223
                    pmrice@drme.org